

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0967-17

### PETER ANTHONY TRAYLOR, Appellant

### v.

### THE STATE OF TEXAS

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS COLLIN COUNTY**

**NEWELL, J., delivered the opinion for a unanimous Court.**

During Appellant's trial for first-degree burglary with a deadly weapon, the jury sent out a note stating that it unanimously agreed that Appellant was not guilty of the offense. However, the jury also indicated in this note that it was deadlocked on the issue of guilt for the lesser-included offense of burglary without a deadly weapon. The trial court instructed the jury to keep deliberating and ultimately declared a mistrial

when the jury could not reach a unanimous decision. This appeal requires us to decide whether the jury's initial note was a final verdict of acquittal on the charged offense. Appellant argues that it was, and therefore his conviction at his second trial violates the Double Jeopardy Clause. We disagree.

## I. Background

The relevant facts here are undisputed. Appellant was charged with first-degree burglary of a habitation. The indictment alleged that Appellant intentionally and knowingly entered his ex-mother-in-law's habitation without her consent and committed an aggravated assault against her.[1] At Appellant's first trial, the jury was charged on both first-degree burglary (the charged offense) and second-degree burglary (a lesser-included offense). The only difference between the two offenses was that the jury did not have to find that Appellant used a deadly weapon in order to convict him of second-degree burglary.

About four hours into deliberations, the trial court received a phone call from the jury stating that it was deadlocked. In response (and without objection from the attorneys), the trial court sent the jury a note

---

[1] *Traylor v. State*, 534 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2017).

stating: "Without indicating whether your vote is guilty or not guilty, please indicate in the spaces provided below the number of jurors voting one way or the other on the guilt/innocence questions." The jury wrote back stating that there were 12 votes for not guilty for the charged offense, and 5 votes for guilty and 7 votes for not guilty for the lesser-included offense. The trial court instructed the jury to continue deliberating.

The jury deliberated for another hour and then recessed for the night. The following morning, the jury deliberated for another two-and-a-half hours. The jury then sent the trial court another note stating: "The Jurors are at an impasse with 2 jurors for 'not guilty' and 2 for 'guilty' who have stated they will not change their position. . . . The vote overall at this time is: 8 not guilty [and] 4 guilty." The State then requested a mistrial; Appellant objected and requested an *Allen* instruction. After determining that further deliberations would be futile, the trial court declared a mistrial. Five months later, Appellant was re-tried for first-degree burglary, and the jury found him guilty. The trial court sentenced Appellant to 20 years' imprisonment.

Appellant appealed to the Thirteenth Court of Appeals, arguing that the trial court abused its discretion by granting a mistrial over his

objection without manifest necessity and that doing so amounted to a double jeopardy violation.  Relying primarily upon the United States Supreme Court decision in *Blueford v. Arkansas*, the court of appeals agreed with Appellant that a double jeopardy violation had occurred.[2] According to the court of appeals, the jury foreman's report on the jury's vote count amounted to an informal verdict of acquittal of the first-degree burglary.[3]  This, in turn, resulted in a jeopardy bar against Appellant's subsequent trial for that charge.[4]  The State asks us to review this decision of the court of appeals, arguing that the court of appeals misapplied *Blueford*.[5]  We will reverse.

## II.  The Jury Note Was Not a Final Verdict of Acquittal

---

[2] *Id.* at 681 (citing *Blueford v. Arkansas*, 566 U.S. 599 (2012)).

[3] *Id.* at 680.

[4] *Id.* at 681.  When addressing the appropriate remedy for the violation, the court of appeals ultimately agreed with Appellant that the trial court had exercised sound discretion in declaring the mistrial because the jury was genuinely deadlocked regarding whether Appellant committed second-degree burglary.  *Id*. at 683.

[5] Neither party challenges the court of appeals' decision to reach this issue in its opinion. *See, e.g., Pena v. State*, 191 S.W.3d 133, 138 (Tex. Crim. App. 2006) (noting that a court of appeals has jurisdiction to address unassigned error, but that it must first assign the error and require briefing from the parties before expanding the reach of a constitutional provision in a manner that threatens to overturn the acts of another branch of government); *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008) ("In the case of a double-jeopardy violation, the issue may be addressed as an unassigned error when the violation is apparent from the face of the record.").

The Double Jeopardy Clause protects against multiple prosecutions for the same offense.[6] The Supreme Court of the United States has stated that the bar on re-trials after acquittal is "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence."[7] A trial may be discontinued, however, without barring a subsequent trial for the same offense when "particular circumstances manifest a necessity" to declare a mistrial.[8] A jury's inability to reach a verdict is a "classic basis" for establishing such a necessity.[9]

The court of appeals held that Appellant's subsequent trial for first-degree burglary was barred after the trial court declared a mistrial in the first trial because the jury's note regarding its deliberations amounted to a verdict of acquittal.[10] The United States Supreme Court recently rejected a similar claim under similar circumstances in *Blueford v. Arkansas*. According to the court of appeals, the facts of this case are significantly distinguishable from those in *Blueford*. We disagree.

---

[6] U.S. CONST. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . .").

[7] *U.S. v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977).

[8] *Blueford*, 566 U.S. at 609 (citing *Wade v. Hunter*, 336 U.S. 684, 690 (1949)).

[9] *Id.* (citing *Arizona v. Washington*, 434 U.S. 497, 509 (1978)).

[10] *Traylor*, 534 S.W.3d at 680.

For a jury note regarding the jury's inability to reach a verdict to bar a subsequent prosecution after a mistrial, there must be some indication that the jury had finally resolved to acquit the defendant.[11]  In *Blueford*, the Supreme Court determined whether a jury reached a final verdict of acquittal for capital murder and first-degree murder.[12]  A few hours into deliberations, the jury indicated to the trial court that it was deadlocked.[13]  The court then issued an *Allen* instruction, which is a supplemental charge sometimes given to a deadlocked jury that emphasizes the importance of reaching a verdict.[14]  The jury then continued deliberating.

A half hour later, the jury told the court it was still deadlocked.[15]  The trial court then asked the foreperson what the vote count was on each specific charge.  The foreperson stated that the jury was unanimous against guilt on both capital murder and first-degree murder but

---

[11] *Blueford*, 566 U.S. at 605–06.

[12] *Id.*

[13] *Id.* at 603.

[14] *Id.* (citing *Allen v. United States*, 164 U.S. 492, 501–02 (1896)); *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006).  The *Allen* instruction emphasizes the importance of reaching a verdict by reminding "the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve."  *Barnett*, 189 S.W.3d at 277 n.13.

[15] *Blueford*, 566 U.S. at 603.

deadlocked on manslaughter.[16]   The court then issued another *Allen* instruction, and the jury continued deliberating.[17]   A half hour later, the jury again returned to the courtroom, indicating that they were still deadlocked.  The court then declared a mistrial, and the defendant was later re-tried on all charges.[18]

The Supreme Court held that the foreperson's verbal report of the vote count was not a final verdict of acquittal because it lacked the "finality necessary to constitute an acquittal on the murder offenses."[19] The Supreme Court reasoned that the vote count lacked finality because: (1) the jury was still deadlocked on the lesser-included offense; (2) the jury continued deliberating after the reported vote count; (3) the foreperson gave no further indication that the jury was still unanimous; and (4) nothing in the jury instructions prohibited the jurors from revisiting the prior vote.[20]   Because the verbal exchange was not a final resolution of the defendant's guilt, the Supreme Court held that the

---

[16] *Id.* at 603–04.

[17] *Id.* at 604.

[18] *Id.*

[19] *Id.* at 606 ("The foreperson's report was not a final resolution of anything.").

[20] *Id.* at 606–07.

Double Jeopardy Clause did not prohibit the second trial.[21]

Here, the court of appeals correctly noted some similarities with *Blueford*. First, like the foreperson in *Blueford*, the foreperson here reported to the trial court that the jurors were unanimous against guilt on the charged offense (here, first-degree burglary) but were deadlocked against guilt on the lesser-included offense (here, second-degree burglary).[22] Second, in both *Blueford* and this case, the jury continued deliberating after the foreperson reported the vote count to the trial court.[23] And lastly, in both *Blueford* and this case, the jury instructions did not prohibit the jurors from reconsidering their votes.[24]

The court of appeals, however, found this case distinguishable from *Blueford* based on the following verbal exchange that took place the day after the reported vote count:

> [Trial Court]: I received your note last night indicating that the jury did not believe that Mr. Traylor was guilty of the [charged] offense, but that there was a disagreement amongst the jurors in the lesser included offense and that you were hung up on that issue and that the vote on that apparently changed by only one juror from last night into

---

[21] *Id.* at 606*.*

[22] *Traylor*, 534 S.W.3d at 679.

[23] *Id.*

[24] *Id.*

today, even after deliberating for almost three hours today. So the note that I received . . . is that the jury is hopelessly deadlocked; is that correct?

[Foreperson]: I use[d] the word impasse, but I suppose deadlock is probably the legal term.

According to the court of appeals, that verbal exchange establishes a final resolution of Appellant's guilt as to first-degree burglary.[25]  We disagree.

As in *Blueford*, the foreperson here gave no indication that the jury was still unanimous on the charged offense in response to the trial court's question.  In fact, shortly before the jury foreman indicated that the jury was at an impasse, the following exchange took place:

[Trial court]:  Did you fill out *any* of the certificates on the Court's Charge?

[Foreperson]:  No, sir, because we have no – no decision.

This unambiguously shows that the jury had not made a final decision on *any* of the charges.  If the jury intended for its vote count from the day before to be a final verdict, then it would have clearly stated so.  But it did not because, as the foreperson conveyed, the jury had not made a final decision.

The court of appeals also failed to fully consider the jury's continued

---

[25] *Id.* at 680.

deliberation after the reported vote count. These continued deliberations factored heavily into the Supreme Court's holding in *Blueford*—even though the jury continued deliberating for only a half hour more—because it gave the jury the opportunity to reconsider its prior vote.[26] Here, the jurors continued deliberating for another three-and-a-half hours after the reported vote count, giving them ample time to reconsider their prior vote. Further, the vote count changed on the lesser-included offense from the time the jury sent the note to the time of the verbal exchange the following day. If the vote on the lesser-included offense changed, the vote on the charged offense could have changed too.[27]

We agree with the State that the jury note here lacks "the finality

---

[26] *Blueford*, 566 U.S. at 606, 608 ("The fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder offenses.").

[27] The jury here was also less restrained than the *Blueford* jury on its ability to reconsider its vote on the charged offense because Texas is not an acquittal-first jurisdiction while Arkansas is. Arkansas requires a jury to "complete its deliberations on a greater offense before it may consider a lesser." *See Blueford*, 566 U.S. at 612 (Sotomayor, J., dissenting). Yet, the Supreme Court still rejected the argument that the jury note in *Blueford* indicated a final resolution of the greater offense even though the jury instructions in Arkansas required the jury to reach a final decision on the charged offense before considering any lesser-included offense. *Id.* at 607–08.

In contrast, Texas leaves it to the jury's discretion to decide which parts of the jury charge it considers first. *Barrios v. State*, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009). Unlike in *Blueford,* the jury here was not told that it could not consider the second-degree burglary unless it first acquitted Appellant of first-degree burglary. The jury was instructed: "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt that the defendant is guilty of [first-degree burglary], *or if you cannot agree*, you will next consider whether he is guilty of [second-degree burglary] as instructed below." Thus, there is even less indication that this jury reached a final decision on the greater offense than what was present in *Blueford*.

necessary to constitute an acquittal" on the first-degree burglary offense.[28]  We disagree with the court of appeals that the facts presented here are significantly distinguishable from *Blueford*.  We hold that the jury note in question did not indicate that the jury had finally resolved to acquit Appellant of the first-degree burglary.

### III.  Our Precedent Does Not Conflict with *Blueford*

Though the court of appeals relied primarily upon *Blueford* in reaching its decision, it did acknowledge that Texas law formally recognizes the existence of informal verdicts.[29]  Article 37.10(a) of the Code of Criminal Procedure sets out in relevant part:

> If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant.[30]

The court of appeals also detailed several Texas cases in which jury notes regarding the inability to reach a verdict did not demonstrate that the

---

[28] *Blueford*, 566 U.S. at 606.

[29] *Traylor*, 534 S.W.3d at 680.

[30] TEX. CODE CRIM. PROC. art. 37.10(a); *see also Antwine v. State*, 572 S.W.2d 541, 543 (Tex. Crim. App. [Panel Op.] 1978).

jury had manifested an intent to acquit the defendant under Article 37.10(a).[31] Yet, the court of appeals distinguished these cases by noting that they pre-dated, and conflicted with, *Blueford*.[32] We perceive no conflict.

Under Texas law, an informal verdict is "one that does not meet the legal requirements of being written or answered as authorized."[33] For a jury note to qualify as an informal verdict of acquittal, we have held that the jury note must also be "plainly intended to operate as an acquittal."[34] In *State ex rel. Hawthorn v. Giblin*, we held that a jury note similar to the one at issue in this case did not qualify as an "informal verdict" under

---

[31] *Traylor*, 534 S.W.3d at 680-81 (citing *State ex rel. Hawthorn v. Giblin*, 589 S.W.2d 431, 433 (Tex. Crim. App. 1979); *Antwine*, 572 S.W.2d at 543; *Ex parte Zavala*, 900 S.W.2d 867, 868–70 (Tex. App.—Corpus Christi 1995, no pet.) (holding that a jury's statement, "we can reach a decision on one of the charges," was not an informal verdict of acquittal); *Cardona v. State*, 957 S.W.2d 674, 677 (Tex. App.—Waco 1997, no pet.) (holding that a jury note was not "plainly intended to operate as an acquittal" because it was only a communication about the jury's progress); *Thomas v. State*, 812 S.W.2d 346, 348–49 (Tex. App.—Dallas 1991, pet. ref'd) ("Assuming without deciding that the note at issue constituted an informal verdict, it does not manifestly appear that the jury intended to acquit [the defendant].")); *see also Hooker v. State*, No. 01-06-00767-CR, 2008 WL 384179, at *5–6 (Tex. App.—Houston [1st Dist.] Feb. 14, 2008, no pet.) (not designated for publication) (holding that a jury note indicating that the jury was deliberating on the lesser-included offense was not an informal verdict of acquittal on the greater offenses); *Noble v. State*, No. 05-02-01734-CR, 2004 WL 11940, at *6 (Tex. App.—Dallas Jan 26, 2004, no pet.) (not designated or publication) (holding that a jury note did not constitute an informal verdict of acquittal); *Clark v. State*, No. 14-98-00425-CR, 1998 WL 820836, at *2 (Tex. App.—Houston [1st Dist.] Nov. 25, 1998, pet. ref'd) (not designated for publication) (holding that a jury note did not constitute an informal verdict of acquittal).

[32] *Traylor*, 534 S.W.3d at 681.

[33] *Nixon v. State*, 483 S.W.3d 562, 566 (Tex. Crim. App. 2016).

[34] *Hawthorn*, 589 S.W.2d at 433; *Antwine*, 572 S.W.2d at 543.

Article 37.10(a).[35]  In that case, the trial court sent a note to the jury asking about its progress.  The jury wrote back that it was unanimous against guilt on attempted murder (the charged offense) but was deadlocked on aggravated assault (the lesser-included offense).[36]  After determining that further deliberations would be futile, the court ordered a mistrial.

We held that the note in *Hawthorn* was not an informal verdict because it was not "plainly intended to operate as an acquittal."[37]  In other words, the jury note did not establish that the jury had finally resolved to acquit the defendant.  Given that the jury was merely responding to an inquiry from the trial court and that the jury was obviously deadlocked, we reasoned that the note was "intended merely as reports on the jury's progress toward a verdict."[38]

Thus, under Texas law we essentially ask the same question that the United States Supreme Court asked in *Blueford*: Did the jury finally

---

[35] *Hawthorn*, 589 S.W.2d at 432–33.  When *Hawthorn* was decided, Article 37.10 had only one paragraph, which became Article 37.10(a) when section (b) was added in 1985. *Nixon*, 483 S.W.3d at 565.

[36] *Hawthorn*, 589 S.W.2d at 432.

[37] *Id.* at 433*.*

[38] *Id.*

resolve to acquit the defendant?  In this case it did not.  Because the jury did not plainly intend for its progress report to be treated as a verdict, the jury note lacked the "finality necessary to amount to an acquittal" on the charged offense.[39]

## IV.  Conclusion

We hold that Appellant's subsequent trial for first-degree burglary does not violate the Double Jeopardy Clause.  The jury note was not an informal verdict of acquittal under Texas law because it lacked the "finality necessary to amount to an acquittal" required under *Blueford v. Arkansas*.  We reverse the court of appeals and affirm the trial court's judgment.

Filed: November 7, 2018

Publish

---

[39] *Id.*; *Blueford*, 566 U.S. at 606, 608.  The facts of *Ex parte Zavala*, 900 S.W.2d at 868–70, show the danger of accepting a jury note as an informal verdict of acquittal.  At the defendant's first trial, the jury told the trial court that it was deadlocked, but that it had reached "a decision on one of the charges."  The court declared a mistrial.  At the habeas hearing, the jurors' testimony conflicted on whether the vote on the charged offense was actually unanimous: two jurors testified that it was unanimous, while two other jurors testified that their not-guilty vote was conditional and they had withdrawn that conditional not-guilty vote.