**Affirmed and Opinion filed May 30, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00381-CR

---

**KENTON FRYER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court
Bastrop County, Texas
Trial Court Cause No. 16,029**

---

## OPINION

A jury convicted appellant of assaulting a public servant and driving while intoxicated with a child passenger (DWI). The trial court sentenced appellant to concurrent sentences of confinement for eight years and two years, respectively. Appellant challenges the sufficiency of the evidence to prove his guilt for the DWI

conviction, and he contends that the trial court erred by denying his request for a mistrial and by submitting a coercive *Allen*[1] charge. We affirm.[2]

## I. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant contends that the evidence is insufficient to prove that he was intoxicated because the State presented no evidence concerning appellant's blood test results or field sobriety tests.

In a sufficiency review, we consider all the evidence in the light most favorable to the jury's verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). We defer to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 766.

To prove the offense of DWI, the State had to prove among other things that appellant was intoxicated. *See* Tex. Penal Code § 49.045(a)(1). A person is intoxicated if the person does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol" or any other substance into the body. *Id.* § 49.01(2)(A).

The State may prove intoxication by lay opinion testimony. *See Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994); *Ritchie v. State*, 296 S.W.2d 551, 553 (Tex. Crim. App. 1956). Evidence of blood alcohol concentration or field sobriety tests is not necessary to sustain a conviction for DWI. *See Annis v. State*,

---

[1] *See Allen v. United States*, 164 U.S. 492, 501–02 (1896).

[2] The Supreme Court of Texas transferred this case from the Third Court of Appeals to this court. *See* Tex. Gov't Code § 73.001. There appears to be no conflict between precedent of the Third Court of Appeals and that of this court on any relevant issue. *See* Tex. R. App. P. 41.3.

578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (sufficient evidence of intoxication regardless of chemical breath test, based on the arresting officer's testimony that the appellant's vehicle swerved across a lane-dividing line several times, and that the appellant appeared disorderly, his speech was "mush-mouthed," he swayed from side to side when walking or standing, his eyes were red, and his breath smelled of alcohol); *Fontenot v. State*, 486 S.W.2d 941, 941–42 (Tex. Crim. App. 1972) (sufficient evidence of intoxication based on the arresting officers' testimony that the appellant was intoxicated and that the appellant was unable to carry on a coherent conversation, was "thick-tongued," was unsure of his balance, and had a strong odor of alcohol about him); *Vaughn v. State*, 493 S.W.2d 524, 526 (Tex. Crim. App. 1972) (sufficient evidence of intoxication based on the arresting officer's testimony that the appellant's car was weaving down the road, appellant was speeding, his eyes were bloodshot, and he told the officer that he had drank about six beers); *see also Sanchez v. State*, No. 14-07-01049-CR, 2008 WL 4647400, at *2 (Tex. App.—Houston [14th Dist.] Oct. 21, 2008, no pet.) (mem. op., not designated for publication) ("The opinion testimony of the arresting officer alone is legally sufficient to support a finding of intoxication.").

In this case, a husband and wife testified that they saw a woman and young child "pushed" or "forced" out of appellant's car on a cold, dark night. The husband and wife went to assist and learned that appellant and the woman had just come from a wedding where appellant had been drinking. The husband testified that he learned appellant had continued drinking in the car, and there was an open "bottle of Crown" in the console of the car. The wife believed that appellant was intoxicated based on the way he was behaving and driving recklessly—in and out of ditches and stopping abruptly. The husband believed appellant had been drinking because of appellant's erratic and dangerous driving, there was a smell of

3

alcohol emanating from the car, appellant was yelling obscenities, and "a lot of what he was saying was incoherent" because of his slurred speech.

The first deputy who arrived on the scene testified that the deputy smelled alcohol emanating from appellant. Appellant assaulted this deputy and attempted to take the deputy's gun. Another deputy who arrived after the assault and assisted with arresting appellant testified that there was a strong odor of alcohol coming from appellant's breath. The deputy described additional characteristics of appellant's intoxication, based on the deputy's training and experience: appellant did not follow commands, he had slow and methodical speech, he was unable to get up off the ground, he fell on his back several times, he exhibited an inability to stand, and his eyes were bloodshot and glassy. Several deputies assisted to load appellant into a patrol car. On a video admitted as an exhibit, someone described appellant as falling asleep.

Viewing this evidence in the light most favorable to the jury's verdict, a rational juror could have found that appellant did not have the normal use of mental or physical capacities by reason of the introduction of alcohol into his body, i.e., appellant was intoxicated. *See Annis*, 578 S.W.2d at 407; *Fontenot*, 486 S.W.2d at 941–42; *Vaughn*, 493 S.W.2d at 526.

Appellant's second issue is overruled.

## II. MISTRIAL AND *ALLEN* CHARGE

In his first issue, appellant contends that the trial court erred "by denying Appellant's motion for mistrial and submitting an additional *Allen* charge after the jury was individually polled and the lone dissenting juror was identified to the court, thereby coercing the dissenting juror into changing his/her vote to 'Guilty' on the charge of Assault on a Public Servant."

## A.  Background

The evidentiary guilt/innocence portion of the trial lasted two days with eight witnesses and twenty-five exhibits, several of which were audio and video recordings. On the next day at 11:10 a.m., the jury began deliberations. The jury sent out six notes requesting evidence, ordering lunch, and asking who needed to sign the forms. The seventh note at 3:10 p.m. asked, "If everyone doesn't agree, what next?" The trial court responded with the following written answer:

> If you could end this litigation by your verdict, you should do so. I do not mean to say any individual juror should yield his or her conscience and positive conviction, but I do mean that when you are in the jury room, you should discuss this matter among yourselves carefully and listen to each other and try, if you can, to reach a conclusion on the issue. It is the duty of jurors to keep their minds open to every reasonable argument. A juror should not have any pride of opinion and should avoid hastily forming or expressing an opinion. A juror should not, however, surrender any conscientious views founded on the evidence unless convinced by his or her fellow jurors of his or her error. I am satisfied that you have not deliberated sufficiently so that, in good conscience, I cannot accept any report that you cannot arrive at an agreement. Accordingly, I return you to your deliberation.

The record does not reflect that appellant objected to the trial court's instruction.

The jury sent another note asking for the definition of assault, and then at 4:10 p.m. sent the ninth note: "We unanimously agree on count two. We do not however agree on count one. Statement has been made 'I am not changing my mind.' How do we proceed?"[3] The trial court responded with the same written instruction as before. The record does not reflect that appellant objected.

The jury sent a note asking to review evidence, and then at 5:10 p.m. the jury informed the court that it had reached a verdict on count one. The jury

---

[3] Count one was assaulting a public servant; count two was DWI.

returned a verdict of guilty on each count. Appellant asked the jury to be polled, and the court asked each juror whether their verdict was guilty for each count. The jurors responded, "Yes," except one juror responded, "No," regarding the count for assaulting a public servant. Outside the presence of the jury, the following colloquy ensued:

THE COURT: On the polling of the jury as to Count 1, we had one juror that claimed that this is not his verdict. Is there any input from the State?

[THE STATE]: I would request that you send the charge back to the jury room and order them to continue to deliberate, Your Honor.

THE COURT: And from the defense?

[DEFENSE]: At this time, Your Honor, I ask that the Court render a hung jury.

THE COURT: At this time, what I will do is I will send this back to—Charge Number 1 back to the jury. I will send them again with the same *Allen* charge that I have previously sent them with and ask them to continue deliberation. We'll stand in recess.

Appellant did not object to the giving of the *Allen* charge.

About an hour and a half later, at 6:35 p.m., the jury returned a verdict of guilty on each count. The trial court polled the jury, and all jurors answered, "Yes." The court accepted the jury's verdicts and adjudicated appellant's guilt.

## B.    Preservation

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A). The

6

specificity requirement is met if the complaint made at trial was clear enough to the trial court so as to permit the trial court to take corrective action when the complaint was made. *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). The complaining party must have informed the trial court what the party wanted, and why the party was entitled to it. *Id.* A complaint is not preserved for appellate review if the legal basis for the complaint raised on appeal varies from the complaint made at trial. *Id.*

An appellant must preserve error regarding a coercive *Allen* charge. *See Thomas v. State,* 312 S.W.3d 732, 740 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Freeman v. State*, 115 S.W.3d 183, 186 n.2 (Tex. App.—Texarkana 2003, pet. ref'd); *see also Barnett v. State*, 189 S.W.3d 272, 277–78 (Tex. Crim. App. 2006) (holding that the appellant's motion for a mistrial, made after the trial court gave a "purportedly coercive *Allen* charge," adequately preserved error; "Appellant's 'complaint' on appeal is that the trial court erroneously inquired into whether the two hold-out jurors could change their verdicts. Thus, appellant was required to make a timely objection, request, or motion once that inquiry was made.").

Appellant's request for the trial court to "render a hung jury" sufficed as a motion for a mistrial due to the jury's inability to reach a verdict.[4] However, appellant did not complain to the trial court about the giving of any *Allen* charge, nor did appellant argue that continued deliberations—with or without an *Allen* charge—would be coercive. On appeal, appellant contends primarily that the trial court's *Allen* charge, given after the trial court discovered the identity of the lone

---

[4] A "hung jury" is commonly understood as a jury that cannot reach a verdict by the required margin. *See Hung Jury*, *Black's Law Dictionary* 987 (10th ed. 2014). A jury's inability to reach a verdict is a "classic basis" establishing the need for a mistrial. *See Traylor v. State*, 567 S.W.3d 741, 744 (Tex. Crim. App. 2018).

hold-out juror, was impermissibly coercive. Because appellant's primary complaint on appeal was not raised below, it is not preserved. *See Thomas*, 312 S.W.3d at 740; *Freeman*, 115 S.W.3d at 186 n.2. Appellant's reliance on *United States v. Sae-Chua* is misplaced because the defendant objected to the giving of an *Allen* charge in that case. *See* 725 F.2d 530, 531 (9th Cir. 1984).[5]

Our review is limited to the preserved complaint that a mistrial should have been declared due to the jury's inability to reach a verdict.

## C.   No Abuse of Discretion to Deny Mistrial

A trial court's denial of a motion for a mistrial is reviewed under an abuse of discretion standard, and the ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). If the jury is polled about whether the verdict is each juror's, and any juror answers in the negative, then "the jury shall retire again to consider its verdict." Tex. Code Crim. Proc. art. 37.05(a). But a trial court has discretion to discharge a jury if the jury "has been kept together for such time as to render it altogether improbable that it can agree." *Id.* art. 36.31.

The trial court is not bound to declare a mistrial at the first sign of jury impasse, and there is no set time for jury deliberation. *Howard v. State*, 941 S.W.2d 102, 121 (Tex. Crim. App. 1996), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535, 538 & n.23, 541 (Tex. Crim. App. 2014). The length of time that the jury may be held for deliberation rests in the discretion of the trial court. *Montoya v. State*, 810 S.W.2d 160, 166 (Tex. Crim. App. 1989). The trial court's "discretion in declaring a mistrial is determined by the amount of time the

---

[5] Furthermore, *Sae-Chua* applied a "prophylactic rule" prohibiting federal courts from questioning their juries regarding numerical division, and this rule "simply has no application to this state proceeding." *Howard v. State*, 941 S.W.2d 102, 124 (Tex. Crim. App. 1996), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535, 538 & n.23, 541 (Tex. Crim. App. 2014).

jury deliberates considered in light of the nature of the case and the evidence." *Beeman v. State*, 533 S.W.2d 799, 800 (Tex. Crim. App. 1976) (trial court granted mistrial); *see Katzenberger v. State*, 439 S.W.3d 566, 570–71 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (applying same factors when trial court denied mistrial); *see also Howard*, 941 S.W.2d at 121–22 (considering the "length of the trial and amount of evidence presented to the jury" in determining that the trial court did not abuse its discretion by denying mistrial). Furthermore, the jury's requests for information and inquiring about evidence shows that the jury is engaged in ongoing deliberation. *See Howard*, 941 S.W.2d at 121–22.

Here, the jury had been deliberating for about six hours, including any breaks, by the time appellant requested a mistrial. The jury had heard two full days of testimony from eight witnesses, and there were twenty-five exhibits including multiple audio and video recordings. While deliberating, the jury actively reviewed the evidence, sending multiple notes requesting evidence. Although the facts and law were not incredibly complex, the jury had to deliberate about two distinct charges—assaulting a public servant and driving while intoxicated with a child passenger—with each charge requiring proof of independent elements.

Under these circumstances, we cannot conclude that the trial court's denial of appellant's request for a mistrial was outside the zone of reasonable disagreement. *See Katzenberger*, 439 S.W.3d at 568, 570–71 (no abuse of discretion to deny mistrial when the jury deliberated for ten and a half hours, heard from ten witnesses over the course of three days, was given five photo exhibits, sent notes requesting evidence, had to determine guilt on single charge of sexual assault of a child, and had to resolve issues of credibility); *Burnett v. State*, 754 S.W.2d 437, 447–48 (Tex. App.—San Antonio 1988, pet. ref'd) (no abuse of discretion to deny mistrial when the jury deliberated for about twenty-one and a

half hours, heard from about thirty witnesses over the course of eight days, and had to determine guilt for a single charge of capital murder), *cited with approval in Green v. State*, 840 S.W.2d 394, 407 (Tex. Crim. App. 1992).

Appellant's second issue is overruled.

### III.    CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgments.

/s/    Ken Wise
Justice

Panel consists of Justices Wise, Zimmerer, and Spain.

Publish — Tex. R. App. P. 47.2(b).