**Opinion issued June 26, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NOS. 01-23-00848-CR

### 01-23-00850-CR

_____

### ROBERTO MARTIN PADEN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 22-CR-2332, 23-CR-1467**

---

### MEMORANDUM OPINION

A jury found the appellant Roberto Paden guilty of indecency with a child by contact[1] and indecency with a child by exposure.[2]

---

[1] *See* TEX. PEN. CODE § 21.11(a)(1), (c)(2). Appellate cause number 01-23-00848-CR relates to trial court case number 22-CR-2332.

On appeal, Paden contends that the evidence is legally insufficient to support his convictions. Paden also argues he was deprived of a fair trial because of alleged prosecutorial misconduct. Neither supports reversal.

## BACKGROUND

The jury convicted Paden of sexually abusing two girls, E.A. and L.A.—his step granddaughters. The older of the two girls, E.A., was twelve years old when the incident occurred. The younger sister, L.A., was around ten.

The incident occurred in the home Paden shared with his wife—the girls' grandmother. It transpired while the girls' mother was at work and their grandmother was in the living room, recovering from back surgery and unable to walk.

Both E.A. and L.A. testified that, on the night in question, they were with Paden in a bedroom playing a game in which the girls pretended to perform surgery on Paden. The bedroom door was closed, and the lights were on. The younger sister, L.A., rubbed some lotion on Paden's abdomen, and the girls pretended to cut open the area.

---

[2]     *See* TEX. PEN. CODE § 21.11(a)(2)(A). Appellate cause number 01-23-00850-CR relates to trial court case number 23-CR-1467.

Paden then told the girls, "Y'all can pull down my pants." Both girls testified that, shortly thereafter, Paden removed his pants and underwear. Paden then told both girls that they could "touch it."

The older sister, E.A., testified that she then touched Paden's penis with her hands. E.A. told the jury, "[a]t first it was touch and let go and he told me to keep touching it." She did what Paden told her to do, and her hands stayed on his penis. E.A. testified that her hands moved because "[h]e said that he wanted me to touch him more." The younger sister, L.A., also testified that E.A. touched Paden's penis, and Paden "made us like choke it." Paden's penis "got bigger," *i.e.*, erect, during this activity.

E.A. stated she eventually removed her hand because Paden said he wanted to go to a different room. She testified, "[h]e said that he would like to make me feel good, too."

Both girls testified that in the other room, Paden sat down on a folding chair and took his pants and underwear off, leaving his body parts exposed. The door was again closed, and the lights were on. E.A., the older sister, testified, "[t]hat's when he said that he wanted me to keep touching him and he got my hands to his penis and then I started touching him." E.A. testified that she "felt really uncomfortable" but she did not want to refuse because she was "scared that he was going to like hit me or something if I refused, because I wanted to tell my mom."

When E.A. stopped touching Paden, Paden then lowered E.A.'s pants and started touching her with his hand. E.A. testified that "he started like touching my butt area and he was like rubbing it." She stated that Paden touched her vagina with his hand and put his fingers inside of her vagina. Paden was still in the chair at that time, and E.A. was in front of him while the younger sister L.A. was on the side.

E.A. stated that Paden then "said that he wanted me to sit on his face." Paden then laid down on the floor, and E.A. sat on his face. When she did so, E.A. testified that Paden's mouth touched her vagina. Paden eventually stopped when E.A. said it hurt. During the incident, Paden also touched E.A.'s breasts with his hand and penis.

The abuse stopped when E.A. told Paden that it hurt. After a period of silence, both girls told Paden that they were tired. The girls then left the room and went to bed.

After the incident, Paden bought the girls various foods, shoes, and other items to keep them from disclosing what happened.

At some point thereafter, Paden confessed to the girls' mother, stating "that [E.A.] had jacked him off" and that "he had asked her to do it." The mother then contacted the police.

4

Paden was subsequently indicted for and found guilty of indecency with a child by contact in relation to victim E.A. and indecency with a child by exposure in relation to victim L.A.[3] Paden received a total sentence of 13 years in prison. Paden appealed.

## DISCUSSION

Paden raises two issues on appeal. First, Paden contends that the evidence is legally insufficient to support his convictions. He emphasizes the jury's verdicts on parallel charges and its communications to the trial court. Second, Paden argues the State engaged in prosecutorial misconduct by calling a "background" witness to interject improper testimony, thereby denying Paden a fair trial and due process. Neither supports reversal.

## I.      The evidence is legally sufficient to support Paden's convictions.

Paden argues the evidence is legally insufficient to support his convictions in both cases. We disagree.

### A.      Background Law

In a sufficiency of the evidence challenge like this one, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have

---

[3]     A total of five cases were consolidated for this trial. This appeal concerns the two cases in which Paden was found guilty. In the other three cases, Paden was found not guilty.

found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We defer to the factfinder to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences. *Id.* The jury, as the sole judge of the facts and credibility of the witnesses, may choose to believe or disbelieve any witness or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt—and circumstantial evidence can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). If the cumulative force of all the incriminating circumstances is sufficient to support the conviction, each fact need not point directly and independently to guilt. *Hooper*, 214 S.W.3d at 13.

"The key question is whether the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (internal quotation marks omitted).

**B.** **The evidence is legally sufficient to support Paden's conviction for indecency with a child by contact.**

Sufficient evidence supports Paden's conviction for indecency with a child (E.A.) by contact. We affirm this conviction.

A person commits the offense of indecency with a child by contact if, with a child younger than 17 years of age, the person "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE § 21.11(a)(1). The Penal Code defines "sexual contact" to include "any touching of any part of the body of a child . . . or any part of the genitals of a person" if the act is "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(2). "[T]he requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks[,] and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981).

This record supports the jury's finding on this charge. Here, E.A. testified that Paden caused her hands and her breasts to touch his penis. E.A. was twelve years old when these events occurred. Among other things, E.A. told the jury: "he told me to keep touching it," "[h]e said that he wanted me to touch him more," and "he said that he wanted me to keep touching him and he got my hands to his penis and then I started touching him." E.A. further testified that Paden touched her breasts with his penis. *See* TEX. PENAL CODE § 21.11(c)(1), (c)(2).

7

Her testimony and the surrounding circumstances likewise support a finding that Paden acted with intent to arouse or gratify his sexual desire. *See McKenzie*, 617 S.W.2d at 216. Paden invited the girls, E.A. and the younger sister L.A., to shave his abdominal hair, pull down his pants, and touch his penis. Paden told E.A. to keep touching it, to touch him more, and to go to the back room because he wanted to make E.A. "feel good, too." In the back room, Paden told E.A. to continue touching him and that "he wanted [E.A.] to sit on his face." The record further reflects that Paden's penis "got bigger," *i.e.,* became erect, during the incident.

Paden's intent was also evinced by E.A.'s testimony that he engaged in other forms of sexual contact. E.A. told the jury that Paden touched her breasts with his hand, caused his mouth to touch her vagina, and caused part of his hand to touch and go inside her vagina. *See* TEX. PENAL CODE § 21.11(c)(1).

Furthermore, the girls' mother, Rachel Vasquez, testified that Paden confessed to her after the incident, stating "that [E.A.] had jacked him off" and that "he had asked her to do it." The jury was free to believe their testimony. *See Sharp*, 707 S.W.2d at 614.

The evidence is sufficient to support a conviction for indecency with a child by contact. *See* TEX. PENAL CODE § 21.11(a)(1), (c)(2); TEX. CODE CRIM. PROC. art. 38.07(a), (b); *see also Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston

[1st Dist.] 2017, no pet.) (child-victim's testimony that defendant placed his mouth on and finger inside her vagina is by itself sufficient to support defendant's convictions for aggravated sexual assault and indecency with a child).

Considering the evidence in the light most favorable to the verdict, a rational juror could have found the essential elements of the offense of indecency with a child by contact beyond a reasonable doubt. *See* TEX. PENAL CODE § 21.11(a)(1), (c)(2); *Hooper*, 214 S.W.3d at 13.

**C.     The evidence is also legally sufficient to support Paden's conviction for indecency with a child by exposure.**

Sufficient evidence similarly supports Paden's conviction for indecency with a child by exposure. The jury found Paden guilty of indecency with a child by exposure in relation to victim L.A. For this offense, the State needed to prove beyond a reasonable doubt that Paden, "with intent to arouse or gratify [his] sexual desire . . . expose[d] . . . any part of [his] genitals," knowing a child younger than 17 years of age was present. *See* TEX. PENAL CODE § 21.11(a)(2)(A). The State met its burden here too.

L.A.—who was around ten years old on the date of the incident—testified that she was present and witnessed the abuse of her sister described above and saw Paden's penis. For instance, L.A. told the jury that Paden removed his pants and underwear leaving his penis exposed and that Paden told both girls that they could

9

"touch it" and that Paden "made us like choke it." E.A. also testified that L.A. was present throughout the above-described abuse when Paden's penis was exposed.

The testimony supports a conviction for indecency with a child by exposure. *See* TEX. PENAL CODE § 21.11(a)(2)(A); TEX. CODE CRIM. PROC. art. 38.07(a), (b); *see also Cantu v. State*, 604 S.W.3d 590, 593 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (testimony of child complainant was sufficient to support a conviction for indecency with a child by exposure).

Considering the evidence in the light most favorable to the verdict, a rational juror could have found the essential elements of the offense of indecency with a child by exposure beyond a reasonable doubt. *See* TEX. PENAL CODE § 21.11(a)(2)(A); *Hooper*, 214 S.W.3d at 13.

### D. Paden's arguments do not change this result.

Paden argues that the jury's communications with the trial court, the victims "blackmailing" Paden after the fact, and the verdicts on related charges render the evidence legally insufficient. We disagree.

First, the jury communications do not assist Paden. Yes, the jury sent a few notes to the trial judge requesting to read the transcript of certain witnesses. The trial judge correctly responded that only upon disagreement may the court read the relevant part of the testimony. *See* TEX. CODE CRIM. PROC. art. 36.28.

10

But this does not render the evidence legally insufficient. To the contrary, the unanimity of the jury's verdicts reflects that any prior disagreement was resolved by the jurors and that the jury found—based on the trial court's charges and the evidence as a whole—that Paden was guilty of the two offenses at issue. *See* TEX. CODE CRIM. PROC. art. 37.05. The jury's communications do not raise an inference of legal insufficiency and do not undermine the validity of the unanimous verdict. *See, e.g.*, *Traylor v. State*, 567 S.W.3d 741, 743–47 (Tex. Crim. App. 2018) (jury note to trial judge lacked finality to be considered anything more than a progress report).

Nor does Paden's blackmail argument change this result. Both girls stated that Paden bought them items to prevent them from disclosing the incident. But the jury—as the sole judge of the facts and credibility of the witnesses—weighed this testimony (and the rest of the evidence) before reaching their unanimous verdict. *See Sharp*, 707 S.W.2d at 614.

Finally, we similarly reject Paden's claim that the jury's allegedly inconsistent verdicts (acquitting him on separate charges) show his convictions were based on legally insufficient evidence. We have already determined that there is sufficient evidence to support each of Paden's convictions. As the Court of Criminal Appeals has explained, when measuring the sufficiency of the evidence, each count must stand or fall on its own. *Hernandez v. State*, 556 S.W.3d 308, 331

11

(Tex. Crim. App. 2018) (op. on reh'g). "[I]f a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, the defendant cannot rely on the inconsistent verdicts to attack the defendant's conviction." *Id.*

## II. Finally, Paden failed to preserve his alleged prosecutorial misconduct argument.

Paden additionally argues he was deprived of a fair trial and due process because, he contends, the State engaged in prosecutorial misconduct by interjecting improper "background" testimony from the lead detective. Paden argues that the challenged testimony amounts to "hearsay by implication," and that the prosecutor engaged in misconduct by eliciting it.

But "[t]o preserve a complaint of prosecutorial misconduct for appellate review, the record must show that the defendant made a specific and timely objection to the error, requested an instruction that the jury disregard the improper matter placed before it, and moved for a mistrial." *Vernon v. State*, 571 S.W.3d 814, 823 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *see* TEX. R. APP. P. 33.1(a).

Defense counsel did not object to any of the testimony now challenged on appeal. Therefore, Paden did not preserve this argument.

Despite this, Paden argues that the "prosecution fell short of its professional constraints," and we should consider the alleged error despite the lack of objection.

12

Precedent instructs otherwise. In *Marin v. State*, the Court of Criminal Appeals sorted our error-preservation rules into three categories: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." 851 S.W.2d 275, 279 (Tex. Crim. App. 1993);[4] *accord Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017) (analyzing the three categories); *see also Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024).

As the Court explained, the third category of rights are forfeitable: they can be lost for failure to insist upon them. *See Marin*, 851 S.W.2d at 278–79. "Most rights fall into the third category"—and "[e]ven constitutional rights may be forfeitable." *Cruz*, 698 S.W.3d at 268.

Here, under controlling Texas law, the unobjected-to testimony that Paden complains of falls within this third category of rights that are forfeited through inaction. *See, e.g.*, *Clark v. State*, 365 S.W.3d 333, 339–40, 339 n.1 (Tex. Crim. App. 2012) (declining to consider defendant's claim that prosecutor's misconduct violated due process right: defendant "forfeited his denial-of-due-process claim" by not objecting); *see also Compton v. State*, 666 S.W.3d 685, 731 (Tex. Crim.

---

[4]     *Marin* was overruled in part on other grounds by *Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). *See, e.g.*, *Grado v. State*, 445 S.W.3d 736, 738–40, 738 n.6 (Tex. Crim. App. 2014).

App. 2023) (declining to consider unchallenged instances of alleged prosecutorial misconduct due to failure to preserve error).

Because Paden did not object to the alleged errors at trial, he forfeited them. Accordingly, Paden has not preserved the error for appellate review. TEX. R. APP. P. 33.1(a).

## CONCLUSION

We affirm the trial court's judgment in each cause number.


Jennifer Caughey
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).